IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

PATRICIA MOORE-KING,

Plaintiff,

v.                                                          Civil Action No. 3:09-CV-804-JAG

COUNTY OF CHESTERFIELD, VIRGINIA, *et al.*,

Defendants.

## **MEMORANDUM OPINION**

This matter is before the Court on a motion to dismiss and cross-motions for summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(1) and 56. In this case, the plaintiff, Patricia Moore-King ("Moore-King"), challenges the zoning ordinance, business license tax ordinance, and fortune teller permit ordinance through which Chesterfield County regulates fortune teller businesses. Moore-King alleges that these ordinances violate her rights to free exercise of religion, free speech, and equal protection under the United States Constitution, and her rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The County has moved to dismiss the "as applied challenges" set forth in the Complaint, contending that those claims are not ripe for judicial determination. Both parties have moved for summary judgment.

For the reasons set forth below, the Court denies the County's motion to dismiss, grants the County's motion for summary judgment, and denies Moore-King's cross-motion for summary judgment.

# I. Standards of Review

## *A. Motion to Dismiss Under Rule 12(b)(1)*

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction on the grounds that the matter is not ripe for judicial consideration attacks a complaint by asserting that it fails to allege facts upon which jurisdiction can be based.[1]  *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  "[A]ll the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Id*; *see also Wise v. United States*, 8 F. Supp. 2d 535, 541 (E.D. Va. 1998) (quoting *Adams* on this point).  For the purposes of this motion, the County assumes the facts set forth in the Complaint to be true, but asserts that because Moore-King has failed to state a proper claim that the zoning ordinances, as applied to her, violate her Constitutional and statutory rights, she has thereby failed to allege facts upon which subject matter jurisdiction can be based.

The Court will apply the standard utilized in motions brought under Rule 12(b)(6) in considering the allegations in the Complaint.  A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contested factual issues.  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering the motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff.  *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001).  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, "state[s] a

---

[1] A challenge under Rule 12(b)(1) may attack subject matter jurisdiction in a different way as well, by contending that the jurisdictional allegations of the complaint are untrue.  *See Adams*, 697 F.2d at 1219.  This type of Rule 12(b)(1) challenge is not issue in the instant case.

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard requires a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts that, when accepted as true, "show" that the plaintiff has stated a claim entitling him to relief, that is, the "plausibility of 'entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 540 U.S. at 545, to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* Although the Court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

In considering such a motion, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

### B. Motions for Summary Judgment Under Rule 56(a)

Under Rule 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Id.* at 255. In reviewing cross motions

for summary judgment, as in the immediate case, the Court must review each motion separately on its own merits "'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Phillip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

Summary judgment must be granted if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To defeat an otherwise properly supported motion for summary judgment, the nonmoving party "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, the mere existence of a scintilla of evidence, or the appearance of some metaphysical doubt concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (internal quotation marks and citations omitted). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

There are no material facts in dispute, therefore summary judgment is appropriate in this matter.

## II. Statement of Material Facts

The Court has concluded that the following represent the salient facts for purposes of resolving the motion to dismiss and the motions for summary judgment.

Moore-King is a self-described "spiritual counselor" seeking relief from several County ordinances that allegedly violate her First and Fourteenth Amendment rights under the Constitution as well as her statutory rights under RLUIPA. Moore-King has named the County;

James J.L. Stegmaier, County Administrator; Joseph A. Horbal, County Commissioner of Revenue; and Thierry G. Dupuis, County Chief of Police as defendants.

Moore-King conducts business under the trade name "Psychic Sophie." She provides various personal services, the legitimacy of which cannot be established by objective means. These include Tarot card readings, psychic and clairvoyant readings, and answering strangers' personal questions in person, over the phone, and via email. Psychic Sophie charges fees for all her services. For personal or telephonic readings, she charges by the quarter hour; for email questions, she charges by the question. Customers may make appointments to meet Moore-King by providing their email addresses, phone numbers, and "PayPal" information. She is available to entertain at parties for a fee of $250.00 for the first two hours, and $50 per hour thereafter.

Moore-King began offering her psychic services in March 2009 from a small office she leased at 1241 Mall Drive, located in Chesterfield County. Her office complex contains numerous other businesses, including licensed mental health professionals.

In her work, Psychic Sophie incorporates lessons learned from the fields of astrology, "psychic/clairvoyant/medium development," and energy healing. She describes her work as "spiritual counseling," asserting that she "brings forth the inherent wisdom of the God-self within each of her client's souls in order to help them achieve spiritual enlightenment." (2d Am. Compl. ¶ 7.) According to her Complaint, Moore-King "does not limit her religious beliefs to any one particular form of religion," but rather embraces an assortment of Christian, Buddhist, Hindu, and New Age traditions, with a particular emphasis on the New Age religious movement. (*Id.* ¶¶ 8-9.) On her website, however, Psychic Sophie asserts that she "does not follow particular religions or practices." Moore-King practices Reiki, which involves "touching with the hands" that supposedly "produces beneficial effects by strengthening and normalizing certain

vital energy fields held to exist within the body." Merriam-Webster On-line Dictionary, http://www.merriam-webster.com/dictionary/reiki (last visited Sept. 30, 2011). She is also an ordained minister of the Universal Life Church.

Moore-King has "practiced" for seventeen years, is now a veritable expert on psychic matters, and has published two books on Tarot card reading. (2d Am. Compl. ¶ 20.) Her "clients are typically seeking information and advice concerning personal relationships . . . or personal or business finances." (*Id.* ¶ 22.)

In her Complaint, Psychic Sophie describes her personal experiences with the County framework for regulating fortune tellers. Around July 11, 2009, Moore-King received a call from a person identifying him- or herself only as a "County official," informing Moore-King that she needed to obtain a business license. (*Id.* ¶ 74.) Moore-King registered with the Commissioner of Revenue on August 6, 2009; she estimated that her 2009 revenue would be less than $10,000. The County had classified her as a fortune teller for purposes of its licensing ordinance. Moore-King discussed her work and her religious beliefs with employees of the Commissioner's office, explaining why she does not consider herself a fortune teller, to no avail.

Shortly after this meeting, Moore-King received a "Notice of Official Action" from the County Commissioner of Revenue, informing Moore-King that, as a fortune teller, she owed the County a business license tax of $343.75. (*Id.* ¶ 82.) Upon receipt of this notice, Moore-King discontinued her counseling services on August 14, 2009, until the entry of a consent order by this Court on January 13, 2010, whereby the County agreed to hold off on enforcing its ordinance and Moore-King agreed to place the $343.75 in escrow pending the Court's ruling on the dispositive motions before the Court.

### III. Chesterfield's Ordinances

The parties agree on the ordinances that apply to Moore-King.  The County Code defines a "fortune teller" as:

> any person or establishment engaged in the occupation of occult sciences, including a fortune-teller, palmist, astrologist, numerologist, clairvoyant, craniologist, phrenologist, card reader, spiritual reader, tea leaf reader, prophet, psychic or advisor or who in any other manner claims or pretends to tell fortunes or claims or pretends to disclose mental faculties of individuals for any form of compensation. Nothing contained herein shall be construed to apply to a person pretending to act as a fortune-teller in a properly licensed theater as part of any show or exhibition presented therein or as a part of any play, exhibition, fair or show presented or offered in aide of any benevolent, charitable or educational purpose.

Code § 6-1.  Although the plaintiff contends that she is not a fortune teller, the parties agree that she falls within the County's definition of a "fortune teller."[2]

Psychic Sophie challenges three provisions of the Chesterfield County Code ("Code"), which work together to regulate the conduct of those engaged in the fortune teller business. Specifically, Moore-King challenges (1) the conditional use ordinance of Code section 15-246, (2) the fortune teller permit ordinance of Code section 6-7, and (3) the business license tax ordinance of Code section 6-44.

First, Moore-King discusses the zoning issues that pertain to her spiritual counseling business.  The office space that Moore-King rents is zoned C-3, which allows "community-scale commercial development to include shopping centers which serve community-wide trade areas and promote public convenience and accessibility.  Toward this end, mixed use projects containing commercial, office and residential townhouse/residential multifamily uses should be

---

[2] In the County Code, the term "fortune-teller" is a word of art.  It encompasses people who do more than predict the future.  For instance, the term includes craniologists and phrenologists (experts who determine human characteristics from the shape of one's skull), and numerologists (experts in the occult meaning of numbers).

encouraged." Code § 19-157. Moore-King notes that other businesses adjoining her office space include psychologists, marriage counselors, and a financial service company. (2d Am. Compl. ¶ 99.) The County Code does not permit fortune teller businesses within C-3 zones. Rather, fortune teller businesses may operate in certain industrial and agricultural zones, and C-5 zones, which are "generally [ ] located along arterials or near industrial areas," and include businesses such as trailer parks, lumber yards, towing lots, and public utility service buildings. Code §§ 19-171, 19-173. In these zones, fortune telling businesses are allowed through a conditional use permit, which must be separately approved by the County Director of Planning. *Id.* § 19-175(j). If approved by the planning director, the business must next be approved by the Planning Commission and then the Board of Supervisors. Since Moore-King is in a C-3 zone, she would either need to move her office to a different zone or have the County change the zoning for her current site. In either event, she would also need to apply for a conditional use permit.

Under the County zoning law, the plaintiff lacks standing either to seek a change to zoning or to apply for a conditional use permit. Only the owner of the property may seek rezoning or a permit. *Id.* § 19-24(a)(1). Since Psychic Sophie is only a tenant, she cannot seek the necessary zoning changes and approvals to operate her business.

Second, Moore-King challenges several subparts of section 6-7, which subjects some types of businesses—"bondsman, fortune-teller, massage therapist, massage clinic operator, nightclub operator, taxi driver or solicitor, or adult business operator"—to obtain a permit issued by the chief of police. The permit application requires the name of an applicant, certain other identifying information, and "written authorization to conduct a background investigation, including a criminal record check." The chief then determines whether the information in the application is true. He may not issue a permit for several reasons, *inter alia*, if the applicant has

8

been convicted of a felony, or a crime "materially affecting" the applicant's ability to operate the business, including crimes of moral turpitude.

Third, Moore-King challenges the licensing fees and taxes that the County imposes on fortune tellers. For most businesses, the licensing fee is determined by gross revenue. If a business generates less than $10,000 in revenues, no fee is imposed. If a business generates more than $10,000 but less than $200,000, a nominal fee of $10 is imposed. Code § 6-4.[3] For most businesses, no business tax is levied upon those with less than $200,000 in revenue. *Id.* § 6-23. The Code also provides for penalties and interest upon late payment. *Id.* §§ 6-15, 6-18, 6-24. Licensure fees for fortune tellers, however, are handled somewhat differently. Under Code section 6-44, all fortune tellers, regardless of revenue, must pay "a license tax of $300," and the fine for fortune telling without a license is set at "not less than $50 nor more than $500 for each such offense." Although some other businesses—such as large "mixed alcoholic beverage retailers," carnivals, circuses, itinerant merchants, and peddlers—are also subject to flat-fee license taxes, *see* Code §§ 6-39, 6-42, 6-47, 6-48, only illicit fortune telling is subject to a fine for failure to get a permit.

## IV. Plaintiff's Claims

Based upon the factual allegations and the ordinances above, Psychic Sophie sets forth seven causes of action, the first three of which are constitutional, and the latter four of which allege statutory violations of RLUIPA.

*Count One.* Moore-King alleges that the County violated her right to free speech under the First and Fourteenth Amendments because the County's business licensing requirements and

---

[3] Businesses that generate annual income of more than $200,000 must pay a gross receipts tax, calculated as a percentage of revenues. The parties apparently agree that Psychic Sophie will not have sufficient business to pay gross receipts tax.

zoning regulations[4] unreasonably restrict her speech on the basis of its content and its viewpoint. Moore-King asserts both facial and as applied challenges to these ordinances.

*Count Two.*  The plaintiff alleges that the County violated her right to freely exercise her religion under the First and Fourteenth Amendments.  She  asserts both facial and as applied challenges to the same Code provisions as in Count One.

*Count Three.*  Moore-King alleges that the ordinance scheme, both on its face and as applied to her, violate the Equal Protection Clause of the Fourteenth Amendment by discriminating against a class based on its exercise of fundamental rights.

*Count Four.*  Moore-King contends that the County violated 42 U.S.C. § 2000cc(a) by prohibiting Moore-King and other fortune tellers from operating within her office building or at other locations in the C-3 zone despite the absence of any compelling governmental interest. Each of the RLUIPA claims (Counts Four through Seven) raises a facial challenge and an as applied challenge to (1) the conditional use permit scheme that prohibits usage of land except in conformity with district regulations; (2) the C-3 zoning scheme; and (3) Code § 15-246, which establishes the fortune teller permit process.

*Count Five.*  Moore-King contends that the County's land use scheme, which treats fortune tellers on less than equal terms as nonreligious assembly or institutional uses, violates 42 U.S.C. § 2000cc(b)(1).

---

[4]  The Code sections that Moore-King challenges are as follows: the provision defining fortune-tellers (Code § 6-1); the provision requiring fortune-tellers to obtain a permit (Code § 15-246), the provision requiring fortune-tellers to obtain a license (Code § 6-7); the provision making fortune telling unlawful without the required license (Code § 6-2); the provisions that work together to keep fortune telling businesses out of the C-3 zoning district (Code §§ 19-158, 19-159, 19-161, 19-162); the provisions requiring fortune-teller businesses to obtain a conditional use permit (Code §§ 19-123, 19-124, 19-126, 19-172, 19-173, 19-175, 19-187, 19-188, 19-190, 19-194, 19-195, 19-197); and the provision prohibiting her from continuing to use her office as a fortune telling business, by application of the provisions that keep fortune telling businesses out of zone C-3 (Code § 19-4).

*Count Six.*   Moore-King claims that the County violated 42 U.S.C. § 2000cc(b)(2) by discriminating against the land use of spiritual counselors that fall within the County's definition of fortune teller, based on their religious beliefs and practices.

*Count Seven.*   Moore-King claims that the County has imposed land use regulations that unreasonably limit fortune tellers within the County, in violation of 42 U.S.C. § 2000cc(b)(3)(B).

### V. Discussion

#### A. Official Capacity Defendants

The plaintiff says that County Administrator Stegmaier, Commissioner of Revenue Horbal, and Police Chief Dupuis are sued in their official capacities, as employees of the County.[5]  Suits against government officers in their official capacities are simply suits against the governmental entity for which the officers work.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, the officials are superfluous defendants and are dismissed.

#### B. Motion to Dismiss

The County contends that Moore-King's challenges to the business license tax ordinance, fortune teller permit ordinance, and zoning ordinance as they apply to her[6] are not ripe for judicial consideration because Moore-King failed to satisfy the County's ordinance requirements for obtaining a business license by failing to apply for the fortune teller permit and failing to apply for the appropriate zoning to conduct her fortune telling business.  The Court disagrees.

---

[5] The Commissioner of Revenue is actually an independent constitutional officer, not a county employee.  Va. Code § 15.2-1600.

[6] The County does not challenge the ripeness of Moore-King's facial challenges in its motion to dismiss.  The Fourth Circuit has stated that "[T]he state procedures requirement does not apply to facial challenges to the validity of a state regulation."  *Holliday Amusement Co. v. South Carolina*, 493 F.3d 404, 407 (4th Cir. 2007) (citations omitted).  The same applies to facial challenges to county regulations.  *See, e.g., Yee v. City of Escondido*, 503 U.S. 519, 533-34 (1992) (rejecting argument that facial challenge to city ordinance is not ripe).

For a case to be ripe for judicial determination, the Court must consider the "'fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Arc of Virginia, Inc. v. Kaine*, No. 3:09cv686, 2009 U.S. Dist. LEXIS 117677, at *16 (E.D. Va. Dec. 16, 2009) (quoting *Texas v. United States*, 523 U.S. 296, 300-01 (1998)). In the land-use context, the first prong takes the form of requiring a final administrative decision.

The County urges the Court to adhere to *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985), and its progeny. In *Williamson County*, the Supreme Court held that a claim brought under the Takings Clause is not ripe "until the government entity charged with implementing the regulations had reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty.*, 473 U.S. at 186. Similarly, in *Holliday Amusement Co. v. South Carolina*, the Fourth Circuit cited failure to follow the "state procedures requirement" set forth in *Williamson County* in dismissing as unripe a claim brought by a distributor of video poker machines attacking a state law outlawing the possession of such machines and subjecting them to forfeiture. *See Holliday Amusement Co.*, 493 F.3d at 406-07. Because the plaintiff had not sought just compensation through a state court procedure, the Court held that the action was not ripe. The County also relies on this Court's decision in *Oxford House, Inc. v. City of Virginia Beach*, 825 F. Supp. 1251 (E.D. Va. 1993), where Court faced a suit brought by a halfway house challenging the city's zoning ordinance that required group homes of more than four unrelated people to apply for a conditional use permit. In granting the motion to dismiss, this Court stated: "[U]ntil requests for conditional use permits are made and acted upon by the City, plaintiffs' challenge to the City's zoning scheme as applied to them is premature." *Id.* at 1254.

The case before the Court is distinguishable from the *Williamson County* line of cases.   In those cases, and the others cited by the County in its memorandum in support of its motion to dismiss,[7] it was unclear to the courts what would happen had the plaintiff availed itself of the state procedures.   In *Williamson County*, the Supreme Court noted that it appeared that "variances *could have been granted* to resolve" the takings issue.   *Williamson County*, 473 U.S. at 188 (emphasis added).   In other words, allowing federal court adjudication at this juncture would discourage plaintiffs from using administrative procedures that may resolve the issue.

To support its decision on this point, the Supreme Court quoted from two of its prior decisions: "'If [the property owners] were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties.'"   *Id*. at 187 (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297 (1981)). "'[T]he property owners had not sought approval for any other plan, and it therefore was not clear whether the Commission would deny approval for all uses that would enable the plaintiffs to derive economic benefit from the property.'"   *Id*. (quoting *Agins v. Tiburon*, 447 U.S. 255,

---

[7] *See Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 614 (6th Cir. 2008) (affirming district court's decision to dismiss for lack of ripeness when the factual record needed further development and the hardship of applying for a conditional use permit was minimal); *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) (stating that the reason to adhere to *Williamson's* "jurisdictional prerequisite" is that "only if a property owner has exhausted the [special exception] process will a court know precisely how a regulation will be applied to a particular parcel"); *Congregation Anshei Roosevelt v. Planning & Zoning Bd.*, 338 F. App'x 214 (3d Cir. 2009) (finding dismissal was proper because the government entity had not determined whether the use in question was allowed); *Shenkel United Church of Christ v. North Coventry Twp.*, No. 07-14674, 2009 WL 3806769 (E.D. Pa. Sept. 4, 2009) (dismissing as unripe because there was no basis to conclude that the church would be unable to operate); *Grace Cmty. Church v. Lenox Twp.*, No. 07-14764, 2009 WL 3059149 (E.D. Mich. Sept. 24, 2009) (dismissing for lack of ripeness when the factual record needed further development and the hardship of applying for a conditional use permit was minimal).   Ripeness is not discussed in *Marks v. City of Chesapeake*, 883 F.2d 308 (4th Cir. 1989), and *Gardner v. City of Baltimore*, 969 F.2d 63 (4th Cir. 1992), two of the cases that the County cites in urging the Court to dismiss the as applied challenges as unripe.

136-37 (1980)).   Likewise, in *Oxford House*, this Court cited *Williamson County* for the proposition that, "because plaintiffs may be granted a conditional use permit if they apply for one, their discrimination claim is unripe in the most fundamental sense." *Oxford House*, 825 F. Supp. at 1260.  In *Holliday Amusement*, the Fourth Circuit held that because the state provided an avenue for inverse condemnation claims arising from regulatory takings, the Court held that the plaintiff was obligated under *Williamson* to avail himself of those procedures.  *Holliday Amusement*, 493 F.3d at 407.  Although cast slightly differently, the same theme runs through *Holliday*—the federal court does not know the outcome of the case were the plaintiffs to adhere to the governmental entity's procedures.  If adherence to those procedures may resolve the matter, the case is not ripe for federal judicial review.

In *Palazzolo v. Rhode Island*, 533 U.S. 606 (2001), an inverse condemnation action, the Supreme Court explained the "final decision requirement" of *Williamson County*:

> [A] land owner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation.  Under our ripeness rules a takings claim based on a law or regulation which is alleged to go too far in burdening property depends on the landowner's first having followed reasonable and necessary steps to allow regulatory agencies to exercise their full discretion in considering development plans for the property, including the opportunity to grant any variances or waivers allowed by law.

*Id.* at 620-21; *see also Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005) ("[A] property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied." (citations omitted)).

The Court is not persuaded by the County's argument.  Both parties recognize that Moore-King falls under the category of "fortune teller" and "occult sciences" in the Chesterfield County Code.  (2d Am. Compl. ¶¶ 30-31; Defs.' Supp. Mem. 3.)  Fortune teller businesses are

14

not permitted by right or permitted with certain restrictions within the County. Fortune teller businesses are permitted as a conditional use in the C-5, I-2, I-3, and A zoning districts. Code §§ 19-175, 19-190, 19-197, 19-196, 19-126. Both parties recognize that Moore-King's business is in a C-3 zone, where fortune telling businesses are simply not allowed. The plaintiff lacks standing to seek a zoning change. Under § 19-24(a)(1), only "the property owner, contract purchaser with the property owner's written consent, or the property owner's agent, with the property owner's written consent" may apply for a modification of the zoning requirements. Moore-King leases the property she uses as her business, and she alleges that the property owner is unwilling to apply for rezoning.

Use of the County's zoning procedures simply cannot change Psychic Sophie's fate. For Moore-King to go through the steps of applying for a conditional use permit, rezoning, special exception, or any other sort of administrative remedy would get her nowhere, and add nothing to the record. In this case, the parties agree that the plaintiff could not apply to rezone her office property, and no discretion exists to allow fortune tellers to obtain variances. Here, the plaintiff has no escape route from the application of the zoning law to her. Thus, administrative remedies do not serve to focus the issues for judicial review.

The uncertainty in the zoning cases dismissed on ripeness grounds is not present here. The Court therefore finds that Moore-King's claims are ripe for judicial determination.[8]

---

[8] Moore-King also contends that rezoning is a legislative, rather than administrative act, arguing that because a legislative act—such as denying an application for rezoning—will be presumed reasonable, a claim should not be unripe for failure to seek a legislative remedy. As the Court has declared Moore-King's claims to be ripe based on a survey of the case law, the Court need not address this argument.

### C. Motions for Summary Judgment

#### 1. Free Speech Claim

At the outset, it is important to recognize that the County's ordinances do not ban Psychic Sophie's business of providing other-worldly advice to her customers. The ordinances do not dictate what kind of advice the plaintiff provides to her customers. The ordinances do not limit her ability to discuss or promote her psychic powers in public forums. The ordinances do not limit her ability to advertise. The ordinances do not limit her ability to take her services to parties in private homes.

Rather, the case is about de minimis regulation of her business. The County's zoning laws control in a very general way where she may locate her business. Other ordinances also require her to pay a fee and get a license. These requirements are common to all businesses in Virginia and, most likely, in the entire nation.

The County argues that the ordinances do not regulate speech at all. This position, however, is incorrect. Every licensure and zoning ordinance imposes some kind of minimal restriction on speech. Here, the plaintiff cannot open a business in certain zoning districts to engage in the speech of advising her customers. A person who cannot pay $300 for a license or cannot obtain a permit from the police chief simply cannot engage in the speech of providing psychic advice.

In some respect, every business regulation affects speech, because every business involves some kind of verbal communication. The speech is not simply an invitation to become a customer, but rather is part of the product the business provides. For instance, a shoe salesman tells his customers that they should take care to support their arches; a mechanic spreads the message that car owners should regularly change their oil; a physician tells his patients to lower

16

their cholesterol; "a lawyer's stock in trade is his time and advice."[9]   In short, zoning and licensure laws do restrict where certain communications can occur, and who may make those communications.  Thus, the ordinances do affect speech.

But this incidental effect on speech does not violate the right to free speech.  The fact that a course of activity—the psychic business ordinance scheme in this case—is carried out by verbal conduct is insufficient to make a free speech claim.  *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978) ("[I]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.") (citation and quotation marks omitted).  Simply because the businesses provide a verbal product, does not mean they can locate anywhere, or that anyone can practice those businesses.  No one would seriously suggest that anyone should be able to open a shoe store or a car repair shop in the middle of a residential neighborhood.  By the same token, no one would seriously suggest that unlicensed people should provide medical or legal services.  At the same time, any regulation that affects speech must be reasonable.

a. Inherently Deceptive Speech

One type of reasonable regulation is that the government can absolutely prohibit speech that is inherently deceptive.  The weight of authority holds that fortune telling is inherently deceptive.  *See, e.g., Ballard v. Walker*, 772 F. Supp. 1335, 1341 (E.D.N.Y. 1991); *Mitchell v. City of Birmingham*, 222 Ala. 389, 389, 133 So. 13, 14 (1931); *Bridewell v. City of Bessemer*, 35 Ala. App. 337, 339-40, 46 So. 2d 568, 570-71 (1950); *White v. Adams*, 233 Ark. 241, 242-43, 343 S.W.2d 793, 793-94 (1961); *Rodgers v. Southland Racing Corp.*, 247 Ark. 1115, 1117, 450

---

[9] This statement is attributed to Abraham Lincoln.

S.W.2d 3, 5 (Ark. 1970). *Contra Nefedro v. Montgomery County*, 414 Md. 585, 600, 996 A.2d 850, 858 (2010).

The undisputed evidence in this case is that Psychic Sophie's business is deceptive. She predicts what the future holds. For instance, the plaintiff answers questions about business prospects. One person asked her, "Will my business turn around in 2010? I've already written off 2009." She responded:

> I wouldn't write off 2009 just yet. A fairly large corporation located north of Virginia will be making contact. . . . This offer will be worth about 3-4K to you, and although you'll have misgivings at first, you will accept.

(Defs.' Opp'n Mem., Ex. A.) The plaintiff's claim to such future knowledge is quintessential deception.

Her counseling ventures are no less deceptive. For instance, she provides personal counseling based on Tarot cards. She also gives psychic advice, in person or by email. Her practices are based in part on her knowledge of astrology. If these facts are not enough to discount the validity of her practices, one need only consider additionally that, for a fee, she will come to parties and entertain guest with her psychic services. To the extent she attempts to predict the future or to provide counseling or other services, her conduct is simply a fraud. Many people will accept her act as an amusement, suitable for party entertainment. The gullible, the infirm, and the weak, however, may believe that she actually provides valuable psychological or business insights.

Deceptive speech enjoys no First Amendment protection. *Cent. Hudson Gas & Elec. v. Pub. Serv. Comm'n*, 447 U.S. 557, 563 (1980). "The government may ban forms of communication more likely to deceive the public than to inform it. . . ." *Id.* at 563 (citations omitted). Since the County can prohibit fortune telling altogether as deceptive speech, clearly

the County may regulate fortune telling through zoning and licensure rules without causing any First Amendment concerns.

### b. Reasonable Regulation

Even assuming that Moore-King's speech is not inherently deceptive, the County's ordinances pass First Amendment muster. Her conduct is a form of commercial speech. Most commercial speech cases deal with advertising that proposes a transaction. Here, verbiage is the product the plaintiff sells. "[T]he State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978). *But see Argello v. City of Lincoln*, 143 F.3d 1152 (8th Cir. 1998) ("The speech itself, fortunetelling, is not commercial simply because someone pays for it . . . . [The speech] *is* the transaction. The speech itself is what the 'client' is paying for."). That the plaintiff's speech is for sale does not deprive it of First Amendment protection, but such speech is "subject to time, place, and manner restrictions." *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981).

The Supreme Court has set forth a four step test to determine the validity of regulation of commercial speech:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*Cent. Hudson Gas*, 447 U.S. at 566. Applying the four part test here, the regulation does not violate the First Amendment.

19

The first two prongs of the test are addressed readily. First, although, as discussed above, the plaintiff's conduct is inherently deceptive, for the purpose of discussion here, the Court will assume it is not deceptive and, therefore, enjoys some level of First Amendment protection. Second, the government has a substantial interest in regulating the business. The kinds of services the plaintiff provides are a fertile ground for fraud and abuse. Weak or unwary citizens can easily be suckered in to pay vast sums for services of questionable value.[10]

Third, the Court must examine whether the regulation directly and materially advances the government interest. The focus here is the relationship between the County's interests and the regulation at issue. "This relationship, or link, need not be proven by empirical evidence; rather, it may be supported by history, consensus, and simple common sense. . . . However, the link is insufficient if it is irrational, contrary to specific data, or rooted in speculation or conjecture." *Educ. Media Co. v. Swecker*, 602 F.3d 583, 589 (4th Cir. 2010) (citation omitted). The County's regulation of fortune telling is clearly related to the County's legitimate interests.

The zoning requirement places fortune tellers in zones generally removed from office complexes and similar medical facilities. By doing so, the County separates fortune tellers from most legitimate licensed professional counselors, psychologists, physicians, and the like, who are most frequently found in office complexes. The separation prevents fortune tellers from absorbing some patina of legitimacy from their neighbors, or even taking their patients. Indeed, the plaintiff's chosen site of enterprise is a small office site with counselors, psychologists, and other mental health therapists. It is easy to see how an unhappy patient of a licensed professional could slide over to the plaintiff for a more satisfying "counseling" experience, albeit one not

---

[10] The Court does not suggest, and the record contains no evidence, that Psychic Sophie does not believe in the service she provides. The fortune telling business, however, is of a nature that invites charlatans and, therefore, merits government scrutiny.

rooted in reality.  Similarly, a client unhappy with his financial services advisor might go to the advisor's neighbor, Psychic Sophie, for her investment advice.

Moreover, all zoning involves line drawing, and someone is usually displeased with the location of the line.  Yet, it must occur.  As discussed above, no one could legitimately contend that a County cannot ban stores, garages, and professional offices in residential areas.  Here, the county has decided, for aesthetic and other reasons, to separate fortune tellers from other businesses.  This is the essence of zoning.  The plaintiff cannot claim that her business is relegated to the least desirable areas of the County; over fifty percent of the county has zoning that permits fortune tellers.  The County's zoning reasonably regulates fortune tellers, while allowing some leeway for the practice to continue.

By the same token, the licensure and permit requirements serve a legitimate interest.  The police chief issues a permit to fortune tellers after getting identifying information and running a background check, including a criminal records check.  No permit is issued if the applicant is a convicted felon or has been convicted of a crime materially affecting his ability to conduct fortune telling.  The plaintiff says that the ordinance's language grants too much discretion to the police chief to determine what offenses are "material" to the ability to tell fortunes.  Virginia law, however, contains hundreds of crimes, and the County need not list them all.  Many of Virginia's occupational regulations have similar requirements, which have for years provided adequate guidance to regulatory officials.  *E.g.*, Va. Code § 54.1-2709 (requiring dentists to be "of good moral character"); *id.* § 54.1-2813 (giving Board of Funeral Directors discretion to deny a license to any individual with a criminal proceeding pending against him); *id.* § 54.1-2930 (requiring physicians to be of "good moral character"); *id.* § 54.1-404 (allowing Board of Architects to restricting architects from associating with anyone engaged in "illegal or dishonest

activities); *id.* § 54.1-831 (authorizing Department of Professional Occupations to protect the public against "incompetent, unqualified, unscrupulous, or unfit" boxing promoters). The police chief, like the other regulators of professions, can determine what kinds of criminal activity are likely to lead to unscrupulous actions by fortune tellers.

Similarly, the license fee of $300 is related to the purposes of the regulatory scheme. At a minimum, it helps to offset the costs of granting permits and policing fortune telling establishments. It also insures that someone entering the field has more than a passing interest in psychic phenomena and is, therefore, less likely to defraud the public.

In sum, the ordinances meet the third prong of the *Central Hudson* test by having a demonstrable relationship with legitimate government interests.

The fourth prong of the *Central Hudson* test is that the commercial speech restrictions must be narrowly drawn. "The restrictions do not need to be the least restrictive means possible, but they do need to have a reasonable fit with the government's interest—a fit that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served." *Educ. Media Co.*, 602 F.3d at 590 (internal quotation marks and citations omitted). Here, the County's regulations strike a reasonable balance between protection of the public and permitting fortune tellers to operate.

In short, to the extent the rules regulate commercial speech, the County has struck a reasonable course, consistent with the First Amendment.

Further, the Court also finds that, even if one considers Psychic Sophie's conduct not to be commercial speech, the ordinances are still acceptable under First Amendment analysis. All speech is "subject to reasonable time, place, and manner restrictions." *Heffron*, 452 U.S. at 647. "So long as protected materials continue to be fully available, and public access is not

substantially impaired, regulation of time, place, and manner does not violate the first amendment." *Wall Distribs. v. City of Newport News,* 782 F.2d 1165, 1168 n.5 (4th Cir. 1986) (citation omitted).   As discussed above in the analysis of commercial speech, the County's ordinances balance the need to protect the public from unscrupulous charlatans with the opportunity for fortune tellers to practice their profession.[11]  The regulatory scheme, therefore, is a reasonable time, place, and manner regulation.

### 2. Free Exercise of Religion and RLUIPA Claims

Moore-King's free exercise claims and her RLUIPA claims have threshold requirements that Moore-King's business be a religious exercise.  The Court finds that Psychic Sophie is not engaged in religious exercise, within either the meaning of the free exercise clause or within the meaning of RLUIPA.   Accordingly, the Court will grant judgment for the County on these claims.

### a. Religious Exercise Under the Free Exercise Clause

According to the Supreme Court, "[o]nly beliefs rooted in religion are protected by the Free Exercise Clause, which by its terms, gives special protection to the exercise of religion." *Thomas v. Review Bd. of Ind.*, 450 U.S. 707, 713 (1981) (citations omitted).  For purposes of the free exercise clause, in determining what comprises a religious exercise, courts are to consider whether the faith "'occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God' in religions more widely accepted in the United States.'" *Morrison v. Garraghty*, 239 F. 3d 648, 658-59 (4th Cir. 2001) (quoting *Dettmer v. Landon*, 799 F.2d 929, 931 (4th Cir.1986)) (internal quotation marks omitted).

---

[11] The plaintiff also asserts that the zoning ordinance is overbroad.   The Court finds, however, that, assuming overbreadth analysis applies here, the zoning ordinance does not overreach.   It allows fortune-tellers to ply their trade in many areas of the County without any content based restriction.

The plaintiff's religious beliefs "'need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection[,]' . . . [n]or 'must religious observations be uniform to merit First Amendment protection." *Id.* (citations and quotation marks omitted). "In evaluating whether a belief is religious in nature, the courts "must take care [to] avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Mitchell v. Angelone*, 82 F. Supp. 2d 485, 490 (E.D. Va. 1999) (quotation omitted). For example, in *Dettmer v. Landon*, 799 F.2d at 931-32, the Fourth Circuit held that the Church of Wicca occupies such a "place in the lives of its members parallel to that of more conventional religions," and held that the doctrine must be considered a religion for purposes for the free exercise clause. In affirming this Court's decision, the Fourth Circuit recited many of the findings of this Court: the "fairly complex set of doctrines relating to the spiritual aspect of [the Wiccan's] lives," "the contents of many of [the Wiccan] doctrines parallel those of more conventional religions," the Wiccan Church's doctrines that "teach ceremonies parallel to those of recognized religions." *Id.* This Court and the Fourth Circuit rejected the government's contention that the Church of Wicca is not a religion because "it is a conglomeration of various aspects of the occult, such as faith healing, self-hypnosis, tarot card reading, and spell casting." *Id.*

In contrast, in *Harrison v. Watts*, 609 F. Supp. 2d 561 (E.D. Va. 2009), this Court rejected the plaintiff's Free Exercise claim because he had pulled an about face in describing his affinity group, the "Five Percenters." In the initial complaint, the plaintiff described the group's doctrine as a "way of life," which the Court found was not "religious" for Free Exercise purposes. On a reconsideration motion, the plaintiff phrased it as the "practice and devotion to Allah's teachings." In finding that the plaintiff was not engaged in the exercise of religion, the

Court noted that the plaintiff had repeatedly claimed his practice was not a religion.  *Id.* at 572-73.

In this case, Psychic Sophie states on her website: "I am very spiritual in nature, *yet I do not follow particular religions or practices*, and 'organized' anythings are not for me.  I pretty much go with my own inner flow, and that seems to work best." (emphasis added).  Although that statement leaves room for interpretation, one thing seems clear—Moore-King follows *no* religion.  It is not as if she claims the mantle of Buddhism, but engages in practices in the name of Buddhism that no other Buddhist believes central to the religion.  It is as if she is Lutheran one day, Buddhist the next, and an ad hoc spiritualist the day following—only, on any given day, she may be all three at once, or none at all.

In the sense that religion embodies a search for the unexplained, Moore-King could claim similarities to a church minister who helps members of a congregation grapple with the mysteries of our earthly and spiritual existence.  But she does not.  She expressly disavows that her beliefs are rooted in any religion, seeming to claim more that they are rooted in all religions, as well as a variety of secular pursuits.  For example, her use of Tarot cards could qualify as religious exercise if she were a practicing Wiccan.  *See, e.g., Singson v. Norris*, 553 F.3d 660 (8th Cir. 2009); *Kay v. Bemeis*, 500 F.3d 1214 (10th Cir. 2007).  But Moore-King does not, however, claim to read Tarot cards as part of the exercise of the Wiccan religion or any other religion.

Indeed, the sheer number and variety of interests that Moore-King invokes cast serious doubts upon her claim to religion:

> Spirituality, astrology, Reiki, natural healing, meditation, mind-body-soul-spirit-chakra study, metaphysics in general, new age philosophy, psychology, human behavior, quantum physics, ancient history, philosophy, Kabala/Kabbalah, writing, jewelry making, reading (Manly P. Hall, Madame Helena P. Blavatsky, Alice Bailey, and James Hillman are of special appeal), music, music, music!, and creativity in all forms are passions and interests of mine.

25

(Defs.' Supp. Mem., Ex. A-1.) Such a panoramic potpourri of spiritual and secular interests does not appear to add up to a religion that can be manifested in practice. This eclectic mix comprises an overall lifestyle, not a belief system parallel to that of God in a traditional religion.

In addition, Moore-King's fee for service model does not conform to common religious practices within the mainstream. Religious experience is not typically thought of as purchased chunks at a time. There appears to be no case law on this issue, and the Court finds this model—although not dispositive—counsels against a finding that Moore-King is engaged in a religious exercise. If Moore-King's practices are indeed rooted in religious belief, it appears that she holds nothing sacred. She rents herself out as an "entertainment psychic" for parties. Most strikingly, Moore-King alleges that she has the ability to spiritually connect with people over the internet based on non-real-time communications, such that for $25 per question, she can dispense spiritual advice via email.

Finally, Moore-King's "counseling" service stems from her "own inner flow." However sincere that belief may be, the Court cannot find that this counseling is rooted in religion.

Simply calling one's practices a religion does not make those practices part of a religion. Psychic Sophie could call her office the Church of Mike Mussina, but that does not make it a religion.

Because the Court finds that Moore-King is not engaged in a religious exercise, the Court need not consider the remaining elements of a free exercise claim—whether Moore-King's professed belief is sincerely held, and whether the County's actions substantially burdened her religious freedom. *See Mitchell*, 82 F. Supp. 2d at 490.

b. Religious Exercise Under RLUIPA

Counts 4, 5, 6, and 7 of the Complaint purport to state claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA). Congress enacted RLUIPA in part to protect religious assemblies and their adherents from zoning laws that impose a substantial burden on the free exercise of religion. 42 U.S.C. §§ 2000cc, *et seq.* The basis of a RLUIPA claim is as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest.

*Id.* § 2000cc(a)(1).[12] RLUIPA broadly protects "[t]he use, building, or conversion of real property for the purpose of religious exercise" so long as the person, assembly, or institution "uses or intends to use the property for that purpose." *Id.* § 2000cc-5(7)(B). In turn, the statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."

The *sine qua non* of any RLUIPA claim is an adverse effect on the practice of a religion. For the same reasons that the Court finds that Moore-King has not established that she is engaged in religious exercise for purposes of the Free Exercise Clause, the Court finds that she has not established that she is engaged in religious exercise for purposes of RLUIPA.

Another reason exists to deny her claims in Counts 5, 6, and 7 for various alleged forms of mistreatment in violation of 42 U.S.C. § 2000cc(b).[13] These provisions only protect

---

[12] As relevant here, RLUIPA only applies to land use regulations, and therefore does not support a challenge to the County's licensure and permit ordinances.

[13] Section 2000cc(b) essentially provides that localities cannot have different zoning rules for religious bodies than it has for other entities.

"institutions" and "assemblies" from adverse treatment. While Psychic Sophie is a person of many spiritual practices, she is neither an institution nor an assembly.

The Court will enter judgment for the County on the RLUIPA claims comprising counts 4 thought 7 of the Complaint.

### 3. Equal Protection Claim

Under the Equal Protection Clause of the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Morrison*, 239 F.3d at 653-54 (quoting U.S. Const. Amend. 14, § 1). The Equal Protection Clause prevents governmental decision makers from treating similarly situated people differently. *Id.* at 654 (citations omitted). To establish an Equal Protection claim, a plaintiff must first show that she has been treated differently from others with whom she is similarly situated and that this differential treatment was the result of intentional or purposeful discrimination. *Id.*; *see also Mitchell*, 82 F. Supp. 2d at 491 (citation omitted) (setting forth same factors). A reviewing court will then examine the intentional or purposeful discrimination under the appropriate level of scrutiny.

Unless the classification is based on a suspect class (namely race, alienage, national origin, religion, or gender) or a fundamental right secured by the Constitution, the state regulation is presumed valid and will be upheld so long as it is rationally related to a legitimate state interest. If a suspect classification or fundamental right is implicated, strict scrutiny is triggered, and the regulation will only pass constitutional muster if it is narrowly tailored to serve a compelling state interest.

Zoning inherently involves some line drawing—classifying businesses according to their purposes is the essence of zoning laws. The issue for the Court is whether Moore-King is

similarly situated, as she contends, to others who are treated differently under the zoning laws. Moore-King identifies herself as a member of the class of persons who have been labeled "fortune tellers," and alleges that she has been denied equal protection of the law, based on the exercise of her fundamental rights of free speech and free exercise, as compared to persons similarly situated. Moore-King contends that she is similarly situated to stage actors, spiritual leaders of other faiths, and other office uses. The comparison with stage actors is bogus. There is no likelihood of fooling the public in dramatic productions. As to spiritual leaders of other faiths, at oral argument on the County's motion for summary judgment, the Court questioned whether Moore-King is similarly situated to spiritual leaders of other faiths:

| | |
|---|---|
| Court: | Are you taking the view that the county can't regulate what she does when she is proposing to charge people for reading fortunes and Tarot cards and giving psychic advice on money matters and these kinds of things? Are you saying she can't be regulated? |
| Moore-King: | Absolutely they can regulate what she does. |
| Court: | And make a background check or two, can't they? |
| Moore-King: | On a fair basis with other spiritual counselors. They can regulate counseling. Whether they may be able to regulate spiritual counseling— |
| Court: | Tell me something. What kind of spiritual advisor in the Episcopal church or the Presbyterian church or the Brethren or whatever gives advice on how to invest your money? How many of them—I don't know any of them that do that. |

(Tr. 44-45.) The Court went on to highlight some of the differences between traditional religions and Moore-King's purported religion. As to office uses, such as counselors, there is an obvious distinction between professionally trained state-licensed counselors and an unregulated fortune teller who performs Tarot card/psychic readings and serves as the hired entertainment at parties. The rationales discussed above with regard to free speech apply equally here. The county has good reason to treat fortune tellers as it does.

The County is entitled to judgment on Moore-King's Equal Protection claims.

### 4. Challenge to Requirement Under Former Version of Code Section 15-246

Moore-King also raises an as applied challenge to portions of the Chesterfield County Code that have been repealed. Before section 15-246 was amended during the course of litigation in this case, it required an applicant to obtain a certificate from five residents of Chesterfield County that the fortune teller was a bona fide resident of the County and of good character. (*See* 2d Am. Compl. ¶¶ 114, 124, 133). Moore-King contends that the County's amendment did not moot her challenge, because she seeks damages for the time period in which she was unable to operate her fortune telling business as a result of her inability to obtain the character references. As Moore-King's fortune telling business has at all times been in a C-3 zone, she has not been allowed to operate her fortune telling business, regardless of whether the character reference requirement applied. Her damages stem from her inability to practice her trade. Even without the character reference requirement, however, she still would not have been able to practice. Here damages, therefore, were unchanged by either the existence or repeal of the language. The Court therefore finds that Moore-King's challenge to the previous version of section 15-246 moot.

### VI. Conclusion

For the reasons set forth above, the Court denies the County's motion to dismiss, grants the County's motion for summary judgment, and denies Moore-King's cross-motion for summary judgment.

The Court will enter an appropriate order.

/s/

John A. Gibney, Jr.
United States District Judge

Date: <u>September 30, 2011</u>
Richmond, VA